# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| PATRICIA ANN RANDALL,<br>     Plaintiff,<br>        v.<br>NANCY A. BERRYHILL, Acting Commissioner of<br>Social Security,<br>     Defendant. | No. 3:17-cv-1354 (MPS) |

## RULING ON THE PLAINTIFF'S MOTION TO REVERSE AND THE DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER

This is an administrative appeal following the denial of Patricia Ann Randall's application for disability insurance benefits. Ms. Randall contends that the Administrative Law Judge ("ALJ") erred in: (1) failing to evaluate the medical opinion evidence in the record consistent with the regulations governing the Social Security Administration and Second Circuit precedent; and (2) failing to consider Ms. Randall's work history in assessing her credibility. I agree with Ms. Randall that the ALJ improperly applied the treating physician rule as to opinions issued by her treating primary care physician, Dr. Joseph Fields-Johnson. The case is therefore REMANDED. I do not reach Ms. Randall's remaining argument concerning the ALJ's assessment of her credibility.

## I.      Background

On March 31, 2014, Ms. Randall filed an application for disability benefits for an alleged disability. (ECF No. 17-3 ("Joint Statement of Facts") at 1.) A disability adjudicator in the Social Security Administration ("SSA") denied Ms. Randall's application on August 20, 2014 and her claims were thereafter denied upon reconsideration on January 29, 2015. (*Id.*) On January 21, 2016, Ms. Randall appeared with counsel before ALJ Barry H. Best. (*Id.*) He denied Ms. Randall's claim on May 23, 2016. (*Id.* at 2.)

The ALJ found that Ms. Randall had the severe impairments of pain syndrome, affective disorders, and anxiety-related disorders. (ALJ Decision, Tr. at 22.) The ALJ found that Ms. Randall suffered from "non-severe" impairments related to the following: "irritable bowel syndrome, gastritis, [gastroesophageal reflux disorder ("GERD")], high cholesterol, headaches, chronic obstructive pulmonary disease, chronic airway obstruction, restless legs syndrome, carpal tunnel syndrome, vasovagal syncope, bursitis, colon polyps, and obstructive sleep apnea. (*Id.* at 23.) The ALJ rejected Ms. Randall's contention that she suffered from fibromyalgia. (*Id.*) Next, the ALJ determined that Ms. Randall did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment, and had the following Residual Functional Capacity ("RFC"):

> to perform less than a full range of light work, as defined in 20 CFR 404.1567(b) and 416.967(b), due to the following limitations. The claimant can lift and carry twenty pounds occasionally and ten pounds frequently. She can stand and walk for six hours in an eight-hour workday. She can sit for six hours in an eight-hour workday. She can occasionally climb, balance, stoop, kneel, crouch, and crawl. She cannot climb ropes, ladders, or scaffolds. She is limited to jobs that are essentially uncomplicated in terms of work tasks. She requires short work breaks on average every two hours. The claimant is able to interact with the public on an occasional basis, provided interaction is limited to the exchange of non-personal work-related information or hand-off of products or materials. She can work in the presence of co-workers and deal with them appropriately on an occasional basis in terms of casual or social contact, but she is unable to work in the context of a work team where ongoing work-related interaction is frequent or continuous. She can deal appropriately with supervisors on an occasional basis, not where monitoring or intervention is frequent or continuous. She can tolerate no more than occasional changes in the job setting. She is unable to perform work requiring travel to unfamiliar places.

(*Id.* at 23-25.) Finally, the ALJ determined that although Ms. Randall lacked the ability to perform any past relevant work, there were jobs that "exist[ed] in significant numbers in the national economy that [she] can perform . . . ." (*Id.* at 33.) For these reasons, the ALJ concluded that Ms. Randall was not disabled within the meaning of the Social Security Act. (*Id.* at 36.)

By letter dated June 22, 2017, the appeals council denied Ms. Randall's request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner. (Joint Statement of Facts at 3.) This appeal followed.[1] Specific facts and portions of the ALJ's decision will be discussed below as necessary.

## II.     Standard

The Social Security Act establishes that benefits are payable to individuals who have a disability. 42 U.S.C. § 423(a)(1). "The term 'disability' means . . . [an] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . ." 42 U.S.C. § 423(d)(1). To determine whether a claimant is disabled within the meaning of the Social Security Act, the ALJ must follow a five-step evaluation process as promulgated by the Commissioner.

The five steps are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations. 20 C.F.R. § 416.920(a)(4). If the claimant has one of these enumerated impairments, the Commissioner will automatically consider that claimant disabled, without considering vocational factors such as age, education, and work experience. *Id.* (4) if the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or

---

[1] While Ms. Randall's hearing took place before an ALJ in Rhode Island (*see* Tr. at 16), she appealed to this Court after moving to Connecticut. (*See* ECF No. 1 at 1 (noting that Ms. Randall is a resident of New London County, Taftville, Connecticut).)

her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work the claimant could perform. *Id.* To be considered disabled, an individual's impairment must be "of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The Commissioner bears the burden of proof on the fifth step, while the claimant has the burden on the first four steps. 20 C.F.R. § 416.920(a)(4).

"A district court reviewing a final . . . decision pursuant to . . . 42 U.S.C. § 405(g), is performing an appellate function." *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Accordingly, a district court may not make a de novo determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to ascertain whether the correct legal principles were applied in reaching the decision, and whether the decision is supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). If the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982). The Second Circuit has defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citation and quotation marks omitted). Substantial evidence must be "more than a mere scintilla or a touch of proof here and there in the record." *Id.*

## III.    Discussion

## A. The ALJ's Evaluation of the Medical Opinion Evidence

Ms. Randall contends that the ALJ erred in his evaluation of the medical opinion evidence, and in particular in his evaluation of her treating sources. (ECF No. 17-1 at 8.) In particular, she contends that the ALJ improperly disregarded the opinions of two of her treating sources and one of her examining sources who conclude that she had "marked limitations" in various areas. (*Id.* at 7-8.) Under the treating physician rule, "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."[2] *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (internal citation and quotation marks omitted). "The regulations further provide that even if controlling weight is not given to the opinions of the treating physician, the ALJ may still assign some weight to those views, and must specifically explain the weight that is actually given to the opinion." *Schrack v. Astrue*, 608 F. Supp. 2d 297, 301 (D. Conn. 2009). The Second Circuit has made clear that:

> To override the opinion of the treating physician . . . the ALJ must explicitly consider, inter alia: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and, (4) whether the physician is a specialist. After considering the above factors, the ALJ must comprehensively set forth his reasons for the weight assigned to a treating physician's opinion.

---

[2] Although the SSA recently adopted regulations effectively abolishing the treating physician rule, it did so only for claims filed on or after March 27, 2017. *See* 20 C.F.R. § 416.920c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from your medical sources . . . . [W]e will consider those medical opinions . . . together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate."). Since Ms. Randall filed her claim before March 27, 2017, I apply the treating physician rule under the previously existing regulations. *See Tanya L., Plaintiff, v. Comm'r of Soc. Sec., Defendant.*, No. 2:17-CV-136, 2018 WL 2684106, at *4 n. 1 (D. Vt. June 5, 2018) ("Because Plaintiff filed her claims before March 2017, however, the Court applies the treating physician rule under the earlier regulations (20 C.F.R. § 416.927), and not under the more recent ones (20 C.F.R. § 416.920c).").

*Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (internal citations, quotation marks, and alterations omitted). "The failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand." *Id.* I now turn to the medical opinions Ms. Randall contends the ALJ erred in evaluating.

### i.    Dr. Ghulam Mustafa Surti

Ms. Randall contends that the ALJ erred in assessing little weight to the medical opinion of Dr. Surti. (ECF No. 17-1 at 5-6.) Dr. Surti, an examiner for the SSA, examined Ms. Randall in July 2014. (*See* Tr. at 455-58.) In his examination, he noted that Ms. Randall "ha[d] been feeling depressed and anxious in the last one year with increased symptoms of decreased ability to function secondary to fibromyalgia affecting her mood, [and] lack of concentration." (*Id.* at 456.) He also noted that Ms. Randall reported "memory problems, not sleeping well, not eating well, isolative, withdrawn behavior, irritab[ility] at times, [and] frequent periods of crying." (*Id.*) Dr. Surti diagnosed Ms. Randall with the following ailments: dysthymia; arthritis, chronic obstructive pulmonary disease ("COPD"), irritable bowel syndrome, carpal tunnel syndrome, fibromyalgia, and muscle spasms. (*Id.* at 457-58.) He also assessed Ms. Randall with a "global access of functioning" ("GAF") score of 50. (*Id.* at 458.)

While the ALJ acknowledged that "Dr. Surti's GAF score of '50' indicates serious limitations in social and vocational areas," he ultimately gave Dr. Surti's opinion "less probative weight" for several reasons. (ALJ Decision, Tr. at 32.) First, he noted that Dr. Surti "rendered his assessment after meeting with the claimant on only one occasion." (*Id.*) Second, he noted that "[d]espite [Ms. Randall's] sad affect and depressed, tearful mood, [her] speech and thought process was linear and goal directed." (*Id.*) Further, the ALJ noted that Ms. Randall did not report any "auditory or visual hallucinations or delusions," or "any suicidal or homicidal ideation

. . . ." (*Id.*)  The ALJ concluded that this demonstrated an inconsistency between Dr. Surti's low

GAF score and his "assessment of [Ms. Randall's] functional imitations." (*Id.*)  This

discrepancy, the ALJ determined, suggested that Dr. Surti's low GAF score was "based on [Ms.

Randall's] unsubstantiated subjective complaints in the context of psychosocial stressors." (*Id.*)

He also noted that Dr. Surti's GAF score was "inconsistent with the overall medical evidence of

record that reflects generally unremarkable mental status exams and [Ms. Randall's] level of

functioning with activities of daily living." (*Id.*)

Dr. Surti is not a treating source for the purposes of SSA regulations.  He was the SSA's

consulting examiner and he examined Ms. Randall only once.  As such, there was no

presumption in favor of granting Dr. Surti's opinion great weight; indeed, there was a

presumption *against* granting his opinion great weight.  *See Selian v. Astrue*, 708 F.3d 409, 419

(2d Cir. 2013) ("We have previously cautioned that ALJs should not rely heavily on the findings

of consultative physicians after a single examination."); *see also Garcia v. Barnhart*, No. 01

CIV.8300 GEL, 2003 WL 68040, at *5 n. 4 (S.D.N.Y. Jan. 7, 2003) ("Doctors who see a patient

only once do not have a chance to develop an ongoing relationship with the patient, and therefore

are not generally considered treating physicians."); *Wlodarczyk v. Astrue*, No. 08-CV-785S, 2010

WL 958299, at *3 (W.D.N.Y. Mar. 12, 2010) (concluding doctor would not be "considered a

treating source because he examined Plaintiff only once"); *Pitts v. Astrue*, No. 08-CV-708S,

2010 WL 456812, at *4 (W.D.N.Y. Feb. 4, 2010) ("[B]ecause Dr. Tanhehco saw Plaintiff only

once, he is not considered a treating source.").  The ALJ did, however, have an obligation to

explain the weight he accorded to Dr. Surti's opinion.  *See Jermyn v. Colvin*, No. 13-CV-5093

(MKB), 2015 WL 1298997, at * 15 (E.D.N.Y. Mar. 23, 2015) ("[T]he ALJ is required to

evaluate and weigh the medical findings of non-treating physicians."); 20 C.F.R. § 416.927

(Effective August 24, 2012 to March 26, 2017)[3] ("Regardless of its source, we will evaluate every medical opinion we receive.")

I conclude that the ALJ's decision to accord Dr. Surti's opinion "little probative weight" is supported by substantial evidence. First, the record contains substantial evidence that Ms. Randall has a higher level of mental functioning than that assessed by Dr. Surti. (*See, e.g.*, Tr. at 406 (report from therapist Eric Paesano assessing plaintiff with a GAF of 55), 90-91 (report from Doctors Youssef Georgy and Clifford Gordon noting that Ms. Randall had moderate limitations in certain areas of mental residual functional capacity and no limitations in others), 131-32 (report from Doctors Karine Lancaster and Marsha Hahn noting the same), 411 (April, 2014 report from Nurse Practitioner Peter Ameck noting plaintiff had no acute issues with anxiety or depression), 461 (October, 2014 report from Nurse Practitioner Ameck noting that the plaintiff did *not* note "[l]ittle pleasure in doing things" or "[f]eeling down depressed [sic] or hopeless"), 477 (November, 2014 letter from Dr. Erika Line-Nitu noting that Ms. Randall appeared "tearful but consolable, no suicidal ideations, judgment intact, able to contract for safety")). Given this conflict between Dr. Surti's opinion and other evidence in the record, the ALJ did not err in choosing to give little weight to his opinion. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve."). Second, as the ALJ noted, the fact that Dr. Surti only examined Ms. Randall once also undercuts the significance of his opinion. *See Pellam v. Astrue*, 508 Fed. App'x 87, 90 (2d Cir. 2013)

---

[3] *Henry v. Colvin*, 561 F. App'x 55, 57-58 (2d Cir. 2014) (looking to regulations in place at time of hearing before ALJ to determine if his decision was supported by substantial evidence). As noted above, the hearing before the ALJ took place on January 21, 2016. When I refer to 20 C.F.R. § 416.927 hereafter, I refer to the version in place from August 24, 2012 to March 26, 2017.

(determining ALJ's decision not to adopt many of doctors' conclusions supported in part by fact that doctor examined plaintiff only once).

For these reasons, I conclude that the ALJ did not err in assigning little probative weight to Dr. Surti's opinion.

### ii.    Nurse Practitioner Renata Sasson

Ms. Randall also avers that the ALJ improperly gave little weight to Nurse Practitioner ("NP") Sasson's opinions concerning Ms. Randall's limitations. (*See* ECF No. 17-1 at 6.) NP Sasson filled out a checklist style form concerning Ms. Randall's depressive disorder. (*See* Tr. at 434-37.) In the form, NP Sasson checked boxes indicating that Ms. Randall suffered from the following conditions: "anhedonia or pervasive loss of interest in almost all activities"; "sleep disturbance"; "decreased energy"; "feelings of guilt or worthlessness"; and "difficulty concentrating or thinking." (*Id.* at 434.) Based upon these findings, NP Sasson checked boxes indicating that Ms. Randall had a marked restriction in the activities of daily living, and an extreme restriction in the areas of maintaining social functioning and concentration. (*Id.* at 436.) NP Sasson's only substantive remarks on Ms. Randall's condition were as follows: "[Ms. Randall's] depression is related to her chronic pain, per her report. Symptoms suggest fibromyalgia, [Ms. Randall] pending evaluation by rheumatologist." (*Id.* at 437.)

The ALJ rejected NP Sasson's findings on the following bases. First, he noted that NP Sasson is not "an 'acceptable medical source'" and that "her statements regarding the claimant's functional limitations are not considered to be from a treating source whose medical opinion may be entitled to controlling weight." (ALJ Decision, Tr. at 32 (quoting 20 C.F.R. § 416.913

(Effective September 3, 2013 to March 26, 2017)[4]).)  Instead, he evaluated NP Sasson's opinion as an "other source" for the purposes of SSA regulations.  (*Id.* (quoting 20 C.F.R. § 416.913(d)).) He then concluded that "Nurse Sasson's assessment lacks a thorough explanation of objective signs and mental status exam findings to support the degree of described functional imitations" and that her "overall primary care and mental health progress notes do not provide detailed, comprehensive findings to substantiate [her] opinion."  (*Id.* at 32-33.)  The ALJ thus concluded that "the statements from Nurse Sasson [were] not . . . persuasive in providing insight into the severity of [Ms. Randall's] impairments and secondary functional limitations."  (*Id.* at 33.)

Ms. Randall's argument that the ALJ erred in disregarding NP Sasson's opinion is not persuasive.  The ALJ's rejection of NP Sasson's opinion was supported by substantial evidence. Without more, NP Sasson's checklist style form was not a compelling piece of medical evidence. *See Woodworth v. Berryhill*, No. 6:17-CV-06216 (MAT), 2018 WL 1989973, at \*4 (W.D.N.Y. Apr. 27, 2018) (It was . . . appropriate for the ALJ to afford less weight to Dr. Andolina's opinion because it was merely a form checklist without additional elaboration.").  Further, NP Sasson's only comments on the form appear to suggest that her evaluation is based largely on Ms. Randall's report of her symptoms.  (*See* Tr. at 437 (noting Ms. Randall's "depression is related to her chronic pain, *per her report*" (emphasis added)); *Roma v. Astrue*, 468 Fed. App'x 16, 19 (2d Cir. 2012) (upholding ALJ's decision not to credit doctor's opinion in part because it was "based largely upon [the plaintiff's] subjective responses").  Finally, although NP Sasson's report notes without any explanation that Ms. Randall's symptoms "suggest fibromyalgia," she also writes that any such diagnosis is "pending evaluation by [a] rheumatologist."  (*Id.*)  Given

---

[4]  When I refer to 20 C.F.R. § 416.913 hereafter, I refer to the version in place from September, 3, 2013 to March 26, 2017.

that the form NP Sasson filled out was titled "Depressive Disorder," her opinion on the resemblance of the plaintiff's symptoms to fibromyalgia is of questionable value at best. Her (reasonable) deference to a rheumatologist for such a diagnosis further obviates the significance of the opinion.

I therefore conclude that the ALJ did not err in disregarding NP Sasson's opinion.

### iii. Dr. Joseph Fields-Johnson

Ms. Randall also contends that the ALJ erred in his weight assignment to her treating physician, Dr. Fields-Johnson. (ECF No. 17-1 at 6-7.) Dr. Fields-Johnson saw the plaintiff seven times in 2015. (*See* Tr. at 515 (report of office visit with Dr. Fields-Johnson on September 9, 2015), 518 (report of office visit with Dr. Fields-Johnson on August 26, 2015), 524 (report of office visit with Dr. Fields-Johnson on July 28, 2015), 533 (report of office visit with Dr. Fields-Johnson on May 18, 2015), 544 (report of office visit with Dr. Fields-Johnson on March 30, 2015), 548 (report of office visit with Dr. Fields-Johnson on March 12, 2015), 552 (report of office visit with Dr. Fields-Johnson on January 23, 2015).) He submitted the medical source reports containing the opinions Ms. Randall highlights, however, after seeing her four times. (*See* 482 (medical source statement on Ms. Randall's physical health dated May 18, 2015), Tr. at 487 (medical source statement on Ms. Randall's depression dated May 18, 2015), 492 (medical source statement on Ms. Randall's anxiety dated May 18, 2015).)

In his opinion on Ms. Randall's physical health, Dr. Fields-Johnson diagnosed the plaintiff with post-traumatic stress disorder and "bipolar depression," (Tr. at 482), and noted that she had symptoms of the following: "anxiety, pain systemically to muscles/joints, insomnia, [and] depression." (*Id.*) Dr. Fields-Johnson concluded in his report on Ms. Randall's depression that it caused her to have the following restrictions: a moderate "restriction of activities of daily

living"; a moderate difficulty in "maintaining social functioning"; a marked deficiency in "concentration, persistence or pace resulting in failure to complete tasks in a timely manner"; and marked episodes of "deterioration or decompensation in work or work-like setting which cause [her] to withdraw from that situation or to experience exacerbation of signs or symptoms . . . ." (Tr. at 489.)   In his report on Ms. Randall's anxiety, Dr. Fields-Johnson assessed her the following restrictions: a moderate "restriction of activities of daily living"; a marked "difficult[y] in maintaining social functioning"; a moderate deficiency in "concentration, persistence or pace resulting in failure to complete tasks in a timely manner"; and moderate episodes of "deterioration or decompensation in work or work-like setting which cause [her] to withdraw from that situation or to experience exacerbation of signs or symptoms . . . ." (Tr. at 493.)

The ALJ accorded Dr. Fields-Johnson's opinions "minimal weight." (ALJ Decision, Tr. at 31.)   As an initial matter, he declined to "afford controlling weight to Dr. Fields-Johnson's opinion on the severity of [Ms. Randall's] mental health impairments" because he concluded it "was not well-supported [by] medically acceptable clinical diagnostic techniques and [was] inconsistent with other substantial evidence in the record." (*Id.*)   The ALJ also noted that Dr. Fields-Johnson had begun treating Ms. Randall in January 2015 and that she had "not followed through with [Dr. Fields-Johnson's] recommendation to seek specialized mental health and psychiatric treatment." (*Id.*)   Further, the ALJ determined that "[o]ther than primary care psychotropic medication management and [an] isolated brief emergency room visit, the record does not reflect any significant, ongoing psychiatric, emergent, or inpatient treatment for uncontrolled symptoms or complications related to depression or anxiety that would support the degree of limitations described in Dr. Fields-Johnson's medical source statements." (*Id.*)   For these reasons, the ALJ declined to afford Dr. Fields-Johnson's opinion controlling weight and

instead assigned his opinion "minimal weight due to the inconsistencies with [Dr. Fields-Johnson's] own records and the overall evidence of record."  (*Id.*)

Ms. Randall does not assert that the ALJ erred in declining to give Dr. Field-Johnson's opinions "controlling weight" but rather that he erred by failing to continue the analysis in determining what weight to assign to Dr. Fields-Johnson's opinions.  (ECF No. 17-1 at 13.)  As noted above, an ALJ's inquiry does not end when he declines to accord a treating physician's opinion controlling weight.  He must then look to the *Greek* factors in determining what weight to apply to the opinion in question.  *See Greek*, 802 F.3d at 375 ("[E]ven when a treating physician's opinion is not given controlling weight, SSA regulations require the ALJ to consider several factors *in determining how much weight the opinion should receive*." (emphasis added)); *Johnston v. Berryhill*, No. 3:16-CV-1466 (JCH), 2017 WL 2896023, at *8 (D. Conn. July 7, 2017) (concluding that ALJ properly declined to give treating physicians' opinions controlling weight but nonetheless remanding due to ALJ's failure to explicitly consider all of the *Greek* factors).  Further, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'"  *Burgess*, 537 F.3d at 129 (quoting *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004)).  "Failure to provide such good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand."  *Id.* at 129-30 (internal quotation marks omitted).

The ALJ did not provide "good reasons" for his weight assessment of Dr. Fields-Johnson's opinion.  As an initial matter, he failed to explicitly consider several of the *Greek* factors.  First, he failed to discuss adequately the length, frequency, nature, and extent of Dr. Fields-Johnson's treatment of Ms. Randall.  In his opinion, he merely notes that Dr. Fields-Johnson "began treating the claimant in January 2015," without elaborating further.  (ALJ

Decision, Tr. at 31.) He does not consider how often Dr. Fields-Johnson treated the plaintiff, the nature of that treatment, or the extent of that treatment. This failure to consider the nature of Dr. Fields-Johnson's treatment before giving his opinion little weight was error.

This omission is especially problematic in light of the ALJ's assignment of great weight to other medical professionals who did not even examine Ms. Randall, let alone treat her. The ALJ afforded the State agency medical and psychological non-examining consultants "great probative weight" despite the fact that none of them treated or saw Ms. Randall. (ALJ Decision, Tr. at 31 ("As for the opinion evidence, the undersigned affords the State agency medical and psychological consultants' assessments great probative weight because they are supported by and consistent with the record as a whole . . . ."); *see also* Tr. at 103-05 (August, 2014 opinion of Doctors Youssef Georgy and Clifford Gordon that, based upon a review of Ms. Randall's medical record, she was not disabled), 118-20 (January, 2015 opinion of Doctors Marsha Hahn and Karine Lancaster that, based upon a review of Ms. Randall's medical record, she was not disabled).) The ALJ's decision to accord greater weight to the State's non-examining physicians than Dr. Field-Johnson's opinion without extensively considering the latter's treatment compounded his error. *See Serrano v. Colvin*, No. 12 CIV. 7485 PGG JLC, 2014 WL 197677, at *16 (S.D.N.Y. Jan. 17, 2014) (noting ALJ's failure to consider length, frequency, nature, and extent of treating physician's care was exacerbated by his decision to give great weight to opinions of non-treating and consultative physicians); *Scott v. Astrue*, No. 09-CV-3999 (KAM), 2010 WL 2736879, at *17 (E.D.N.Y. July 9, 2010) (noting ALJ's failure to consider length, frequency, nature, and extent of the treating relationship of plaintiff's treating physician was exacerbated by his significant weight assignment to a consultative physician).

The Commissioner contends in her response that "[t]he record reveals that Dr. Fields-Johnson examined [Ms. Randall] only three times before issuing his restrictive opinion regarding [her] functioning, therefore, at the time he issued his opinion, their treatment relationship was relatively limited." (ECF No. 18-1 at 7.) While this is not necessarily an unreasonable ground for the ALJ's decision, it is not the ground upon which the ALJ relied. It is a "fundamental rule of administrative law" that "a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency." *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947). Should the court find "those grounds [to be] inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis." *Id.* This is exactly what the Commissioner invites by providing her *post hoc* rationalization for the ALJ's opinion. I therefore conclude that the ALJ failed to consider the first *Greek* factor in allotting minimal weight to Dr. Fields-Johnson's opinion.

The ALJ also failed to consider adequately Dr. Fields-Johnson's specialization, which is osteopathic medicine. (*See, e.g.*, Tr. at 553 (listing Dr. Fields-Johnson as "Joseph Fields-Johnson, DO").) Although the ALJ noted that Dr. Fields-Johnson was a D.O., an abbreviation for doctor of osteopathic medicine, (*see* ALJ Decision, Tr. at 29), this does not meet the threshold of consideration required by *Greek*.[5] *See Enrique Marte* v. *Berryhill* No. 17CV3567VSBJLC, 2018 WL 2979475, at *14 (S.D.N.Y. June 14, 2018) ("Although the record

---

[5] The Commissioner once again attempts to provide a *post hoc* rationalization for the ALJ's failure to consider Dr. Fields-Johnson's specialization, noting that Dr. Fields-Johnson "was [Ms. Randall's] primary care physician and therefore did not have the expertise of a specialist in mental illness." (ECF No. 18-1 at 7.) As noted previously, however, this after the fact rationale does not make up for the ALJ's failure to consider this factor in the first instance. *See Chenery Corp.*, 332 U.S. at 196.

reflects that [the plaintiff's treating physician] is a specialist in internal medicine, there was no discussion about his specialization in the ALJ's opinion." (internal citation omitted)); *Cabrera v. Berryhill*, No. 16CV4311ATJLC, 2017 WL 3172964, at *11 (S.D.N.Y. July 25, 2017), *report and recommendation adopted sub nom. Cabrera v. Comm'r of Soc. Sec.*, No. 16CIV4311ATJLC, 2017 WL 3686760 (S.D.N.Y. Aug. 25, 2017) (concluding that ALJ's fleeting mention of treating physician's specialty did not constitute consideration of specialty for purposes of SSA regulations).

The most significant flaw in the ALJ's treatment of Dr. Field-Johnson's opinion, however, is his failure to provide "good reasons" for rejecting it. As noted above, the ALJ's reasoning for assigning little weight to Dr. Fields-Johnson's opinion essentially amounts to the following: (1) a conclusory assertion that Dr. Fields-Johnson's opinion regarding the severity of Ms. Randall's impairments was not supported by medically acceptable clinical diagnostic techniques and was inconsistent with other evidence in the record; (2) an unsupported assertion that Ms. Randall had failed to follow through on Dr. Field-Johnson's recommendations to seek further specialized mental health care; (3) another conclusory assertion that the record does not reflect any significant ongoing treatment for "uncontrolled symptoms or complications related to depression or anxiety that would support" Dr. Fields-Johnson's opinions; and (4) unspecified "inconsistencies [between Dr. Fields-Johnson's opinion and his own records] and the overall evidence of record." (ALJ Decision, Tr. at 31.)

The ALJ's failure to support any of these reasons with further analysis or relevant citations to the record prevents them from serving as "good reasons" in support of his weight designation to Dr. Fields-Johnson's opinions. *See Genovese v. Colvin*, No. 13-CV-03338 FB, 2014 WL 1949227, at *3 (E.D.N.Y. May 15, 2014) ("The ALJ dismissed all of [the plaintiff's

treating physician opinions in a single cursory paragraph, falling well short of her obligation to provide good reasons for doing so." (internal quotation marks omitted)).  Notably, the ALJ did not elaborate on any of his conclusory critiques of Dr. Fields-Johnson's opinions.  This alone requires remand.  The ALJ's error is trebled, however, by the apparent deficiencies in the cursory reasoning he provided.

As an initial matter, two of the reasons the ALJ provided for discounting Dr. Fields-Johnson's opinions make little sense on their face.  Ms. Randall's failure to follow up on treatment Dr. Fields-Johnson recommended, for example, does not have any apparent relationship to the validity of Dr. Fields-Johnson's opinion.  If there is any such relationship, the ALJ does not elaborate upon it.  Thus, this rationale provides little support for the ALJ's weight designation.  The ALJ's conclusion that Ms. Randall had failed to pursue ongoing treatment for uncontrolled symptoms related to depression or anxiety suffers from a similar deficiency.  First, the ALJ once again does not explain how Ms. Randall's failure to seek further acute treatment undermines Dr. Fields-Johnson's opinions.  Second, this reasoning is contradicted by the record, as Ms. Randall continued seeking treatment for her conditions and, as the ALJ noted, was hospitalized for her psychiatric problems.  (*See* Tr. at 526-27 (medical report from Dr. Fields-Johnson dated July 28, 2015 noting Ms. Randall's ongoing "[s]evere" depression), 521 (medical report from Dr. Shokoufeh Dianat dated August 18, 2015, noting that Ms. Randall felt "down, depressed, or hopeless" and had "[l]ittle interest or pleasure doing things), 517 (medical report from Dr. Fields-Johnson dated September 9, 2015 noting Ms. Randall's depression had worsened), Tr. at 579 (documentation of Ms. Randall's hospitalization on November 25, 2015 for "*psychiatric problem[s] and suicidal ideation*" (emphasis added)).)

Third, to the extent the ALJ is suggesting that the claimant's supposed failure to seek further treatment shows that, contrary to Dr. Fields-Johnson's opinion, she was not suffering from serious depression or anxiety, that suggestion, in this context, amounts to the expression of an impermissible medical opinion by the ALJ. *See Goldthrite v. Astrue*, 535 F. Supp. 2d 329, 339 (W.D.N.Y. 2008) ("In analyzing a treating physician's report, the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion, nor can he set his own expertise against that of a physician who submitted an opinion or testified before him." (internal quotation marks omitted)). Especially given the numerous reports in Dr. Fields-Johnson's notes that Ms. Randall has "less interest in doing things" and was feeling "hopeless" (Tr. at 515, 518, 524), the ALJ was required to point to other medical evidence in the record before, apparently, concluding that Ms. Randall's supposedly inadequate follow-up on her own treatment meant that she was not actually seriously depressed. At the very least, the ALJ failed to present good reasons—indeed, *any reasons whatsoever*—in support of his conclusion that Ms. Randall's alleged lack of treatment after Dr. Fields-Johnson issued his opinions undermined their validity.

While the ALJ's other reasons for assigning Dr. Fields-Johnson's opinions little weight—i.e., the alleged inconsistency between his opinions and his own treatment notes, along with the record, and the fact that his opinions were not supported by medically acceptable techniques—are more persuasive in the abstract, they appear to conflict with the record. Notably, the ALJ does not mention how Dr. Fields-Johnson's opinions are inconsistent with his treatment notes, which appear to uniformly document the plaintiff's mental ailments. (*See* Tr. at 555-56 (January 2015 report from Dr. Fields-Johnson diagnosing Ms. Randall with major depression and anxiety and noting that she was "severely depressed"), 551 (March 12, 2015 report from Dr. Fields-Johnson noting Ms. Randall suffered from suicidal ideation, post-traumatic stress disorder, and

bipolar affective disorder), 545-47 (March 30, 2015 report noting Ms. Randall suffered from "severe" depression), 533-35 (May 2015 report noting Ms. Randall suffered from bipolar affective disorder and was unable to sleep for past two weeks due to anxiety)).  While the Commissioner again attempts to fill in the gap in the ALJ's decision, (*see* ECF No. 18-1 at 7 (averring that "[t]here is no indication that [Dr. Fields-Johnson] even performed a mental status screening at the April 2015 and May 2015 appointments")), this once again is unavailing given the ALJ's failure to present such reasoning in his opinion.  Similarly, the ALJ's conclusion that Dr. Fields-Johnson's opinions were not supported by medically acceptable clinical diagnostic techniques is belied by the record—at least the exhibits cited by the ALJ to support this conclusion, which consist of Dr. Fields-Johnson's medical source statements and treating notes.  (ALJ Decision, Tr. at 31.)  Indeed, given the ample reports of severe depression and anxiety in Dr. Fields-Johnson's notes listed above, it is unclear what medically acceptable clinical diagnostic techniques his treatment lacked.  The ALJ failed to point to any such techniques in any event.

Most troubling of all is the ALJ's unsupported determination that Dr. Fields-Johnson's opinion conflicts with the medical evidence.  Given that the ALJ chose to provide significant weight only to the State agency non-examining physicians, he presumably meant that Dr. Fields-Johnson's opinion conflicts with these conclusions.  While the lack of evidence supporting the ALJ's conclusion in this regard constitutes error, his implied choice of the consulting physicians' conclusions over those of Dr. Fields-Johnson compounds this error.  The reports of non-examining physicians are generally "entitled to less weight than those of a treating or consulting physician who examined a claimant."  *Garcia v. Comm'r of Soc. Sec.*, 208 F. Supp. 3d 547, 554 (S.D.N.Y. 2016); *see also Bailey v. Comm'r of Soc. Sec*., No. 13-CV-2858 (NGG), 2016 WL

3962950, at *8 (E.D.N.Y. July 21, 2016) ("[B]ecause Dr. Gonzalez was a non-examining physician, his findings may be deemed not sufficiently substantial to undermine the opinion of the treating physician." (internal quotation marks omitted)); *Rolon v. Comm'r of Soc. Sec.*, 994 F. Supp. 2d 496, 509 n. 5 (S.D.N.Y. 2014) ("While there is no per se rule stating that the one-time examinations of non-treating consultative physicians or non-examining sources cannot constitute substantial evidence, the Second Circuit has repeatedly emphasized that such sources will rarely rise to the level of substantial evidence capable of undermining a treating physician's findings."). The ALJ's implicit choice of the opinions of the State's non-examining physicians over the opinions of Dr. Fields-Johnson without any reasoning thus flips the presumption in favor of the opinions of treating physicians over non-examining physicians on its head.[6] Thus, the ALJ committed legal error in his weight assignment to Dr. Fields-Johnson's opinion.

The ALJ's failure to provide good reasons for his weight assignment to Dr. Fields-Johnson's opinion was not harmless. The forms Dr. Fields-Johnson filled out defined a "marked" impairment as "[a]n impairment which seriously affects [the] ability to function independently, appropriately and effectively." (*See* Tr. at 489, 493.) Thus, his conclusion that Ms. Randall's maladies resulted in marked impairments could turn the tide if credited by the ALJ. As such, I am not able to say with reasonable certainty that the ALJ would arrive at the

---

[6] It is also worth noting that the state agency examiners issued their opinions regarding Ms. Randall in August 2014 and January 2015, respectively. (*See* Tr. at 103-05 (opinions of Doctors Georgy and Gordon), 118-20 (opinions of Doctors Hahn and Lancaster).) The ALJ noted that he afforded "the opinions by Dr. Lancaster and Dr. Hahn greater weight than the initial assessments because they were able to review a more complete and updated record." (ALJ Decision, Tr. at 31.) He also averred that "[e]vidence submitted after Dr. Lancaster and Dr. Hahn rendered their assessments is consistent and cumulative; it does not warrant a change in the weight afford to the State agency consultants' opinions." (*Id.*) The ALJ failed to provide any further explanation for this conclusion. Thus, the ALJ chose to credit the non-examining State physicians' outdated opinions over Dr. Fields-Johnson's contemporary opinions without significant discussion.

same conclusion upon remand if he had correctly applied the treating physician rule to Dr. Fields-Johnson's opinions. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *compare Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (finding violation of treating physician rule harmless where there was "no reasonable likelihood" that full compliance with the rule would have changed the ALJ's disability determination). Remand is therefore required.

### B. Remaining Grounds

Ms. Randall also contends that the ALJ erred in his assessment of her credibility. (*See* ECF No. 17-1 at 22.) I need not reach this issue as I have already determined that the case must be remanded for the reasons discussed above. Specifically, I express no view on whether the ALJ should give controlling weight to Dr. Fields-Johnson's opinion or on any other issues except those expressly addressed by this ruling.

## IV. Conclusion

Ms. Randall's motion for an order reversing or remanding the Commissioner's decision (ECF No. 17) is GRANTED, and the Commissioner's motion to affirm that decision (ECF No. 18) is DENIED. The case is hereby REMANDED.


IT IS SO ORDERED.

                    /s/
                    Michael P. Shea, U.S.D.J.

Dated:          Hartford, Connecticut
                September 4, 2018